**HEMPFIELD AREA SCHOOL DISTRICT, Appellant**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD and Hempfield Area Education Association, PSEA/NEA.**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 2007.

Decided March 12, 2007.

Reargument Denied May 3, 2007.

---

David A. Strassburger, Greensburg, for appellant.

Warren R. Mowery, Jr., Harrisburg, for appellee, Pennsylvania Labor Relations Board.

Ronald N. Watzman, Hunker, for appellee, Hempfield Area Education Association, PSEA/NEA.

BEFORE: LEADBETTER, President Judge, SMITH–RIBNER, Judge (P), and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Hempfield Area School District (School District) appeals from an order of the Court of Common Pleas of Westmoreland County (trial court) which dismissed the School District's petition for review of the final order and decision of the Pennsylvania Labor Relations Board (Board) which found that the School District had committed an unfair labor practice for refusing to arbitrate a grievance. We affirm.

On November 5, 2004, the School District sent a letter to certain retirees notifying them that as of January 1, 2005, the School District would no longer provide them with health insurance after they reached age 65. The decision affected 97 retirees who retired prior to the end of 1994 and who had previously received some health care coverage beyond age 65 (existing retirees). The decision had no impact on existing employees of the School District.

On November 23, 2005, Hempfield Area Education Association PSEA/NEA (the

Union), submitted a grievance to the School District and requested arbitration. The form contains a space for the "Name of Aggrieved Employee." That space on the form was blank. In the "Nature of Grievance" section, the Union wrote as follows:

The Hempfield Area School District violated the applicable contracts when it refused to provide retired employees of the Hempfield Area School District Teachers Bargaining Unit, continuing health care coverage under the provisions of the agreements between the Hempfield Area School District and the Hempfield Area Education Association.

Reproduced Record (R.R.) at 6a. The School District responded to the grievance by stating, among other things, that: "The Hempfield Area Education Association cannot represent retirees in a grievance proceeding." R.R. at 165a.

On May 20, 2005, the Union filed a charge of unfair practices with the Board. The Union charged that the School District violated Section 1201(a)(1) and (5) of the Public Employe Relations Act (PERA) by refusing to arbitrate its grievance.[1]

On June 22, 2005, the Secretary of the Board refused to issue a complaint on the charge stating that the Board did not have the authority to adjudicate rights of allegedly aggrieved retirees due to the fact that the existing retirees fell outside of the definition of "employe" under Section 301(2) of PERA. The Secretary further cited to *Township of Wilkins v. Wage and Policy Committee of the Wilkins Township Police Department*, 696 A.2d 917 (Pa. Cmwlth.1997), which found that a municipality may not enter into a collective bargaining agreement over the rights of existing retirees because such individuals are no longer employees or members of the bargaining unit.

The Union filed exceptions to the Secretary's decision alleging that the School District's conduct was a violation of the collective bargaining agreement (CBA), as the School District took away the early retirement incentive. The Union further alleged that violations of provisions of the CBA are mandatorily arbitrable pursuant to PERA and that matters of arbitrability are to be determined first by the arbitrator and not by the Board. The Union also stated that the early retirement incentive was not a benefit for persons already retired but is a benefit for existing employees who may choose to retire early.

The Board remanded the case to the Secretary with instructions to issue a complaint stating in pertinent part as follows:

On July 7, 2005, the Union filed timely exceptions, alleging additional facts that clarify the charge as filed. Upon review of the exceptions, we find that the charge is sufficient to warrant the issuance of a complaint, and accordingly, this matter will be remanded to the Secretary.

The parties shall not construe this order directing remand as a determination that the June 22, 2005 decision of the Secretary was in error. We find that the charge as clarified by the exceptions is sufficient for the issuance of a complaint.

Board Order, July 19, 2005, at 1.

Following remand, the Secretary issued a complaint and notice of hearing, assigning the charge to conciliation and directing that a hearing be held if conciliation did not resolve the charge. Conciliation did not resolve the charge and on October 14, 2005, a hearing was held before the Hearing Examiner who issued a proposed deci-

---

1. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.1201(a)(1) and (5).

sion and order obligating the School District to arbitrate the grievance. The Hearing Examiner determined that "any argument about the arbitrability of the grievance is to be made in arbitration", not before the Board. Proposed Decision and Order at 3. The Hearing Examiner concluded that the School District committed an unfair labor practice within the meaning of Section 1201(a)(1) and (5) of PERA.

The School District filed exceptions with the Board. The School District contended that the ability of the Union to represent retirees is not a question of arbitrability and therefore does not need to be submitted to the arbitrator in the first instance. Specifically, that "the refusal to arbitrate is not an unfair labor practice if, as here, the reason for refusing to arbitrate is that the Union does not, and cannot, represent retirees in the grievance process." Statement of Exceptions to Hearing Examiner's Proposed Decision, Exception No. 4 at 2. The School District further contends that the Union can only represent employees and retirees are not employees.

On December 13, 2005, the Board dismissed the School District's exceptions and made final the Hearing Examiner's proposed decision and order. The School District petitioned the trial court for review on January 4, 2006. The trial court relied upon *Pennsylvania Labor Relations Board v. Bald Eagle Area School District,* 499 Pa. 62, 451 A.2d 671 (1982), in stating that "[t]he matter of arbitrability is in the first instance for the arbitrator to decide" and dismissed the School District's petition for review on May 5, 2006. The School District now appeals to our court.

The School District contends that the trial court erred in determining that the Union must first pursue a grievance on behalf of a retiree before an arbitrator. The School District also asks our court whether the Union may grieve on behalf of

retirees and whether *Richland Education Association v. Pennsylvania Labor Relations Board,* 43 Pa.Cmwlth. 550, 403 A.2d 1008 (1979), is still the law of this Commonwealth.

We first address *Richland,* wherein our court affirmed a decision of the Court of Common Pleas of Cambria County which affirmed a final order of the Board, dismissing the charge of an unfair labor practice. The appellant had charged the school district with an unfair labor practice for refusing to arbitrate a grievance in violation of Section 1201(a)(1) and (5) of PERA. The Board found that a temporary substitute teacher, whose wage dispute constituted the basis for the grievance, was not a member of a bargaining unit covered by the contract. Our court determined that this was a proper issue for the Board, that an arbitrator need not resolve it. Our court set forth Section 604 of PERA:

> The board shall determine the appropriateness of a unit which shall be the public employer unit or a subdivision thereof. In determining the appropriateness of the unit, the board shall:
>
> (1) Take into consideration but shall not be limited to the following: (i) public employes must have an identifiable community of interest, and (ii) the effects of over-fragmentization....

43 P.S. § 1101.604.

*Richland* is distinguishable from our case and is still the law of this Commonwealth. *Richland* involved a current employee and the determination of which unit or subdivision the employee would fall under. The Board determined that a temporary substitute teacher was not part of the bargaining unit covered by the contract. Here, the matter before our court involves a retired employee who was and may still be covered under the contract.

In *Danville Area School District v. Danville Area Education Association, PSEA/NEA,* 562 Pa. 238, 754 A.2d 1255 (2000), the Supreme Court reversed our court and further determined that the arbitrator was correct in opining that Mrs. Walter, a retiree, did have standing to grieve the determination of her retirement benefits. The Supreme Court stated in pertinent part as follows:

> He [arbitrator] indicated that the agreement did not limit the grievance process to "employees" but permitted "persons" to initiate a grievance. Article VIII. Furthermore, the agreement specifically addressed retirement benefits and made reference to "retirees" in Article XVII(c) of the agreement. Thus, the arbitrator concluded that Mrs. Walter had standing to file a grievance. Applying the essence test, the arbitrator addressed an issue within the terms of the agreement and resolved the issue by applying the terms of the agreement. Clearly, the arbitrator's determination was rationally derived from the agreement.

*Id.* at 252–253, 754 A.2d at 1262.

We note that the Secretary in the present case cited *Township of Wilkins,* to support her determination that retirees are not employees. *Wilkins* involved an Act 111 arbitrator's award amending provisions of the CBA in which our court determined that "[a] municipality may not enter [into] an agreement over the rights of existing retirees because such individuals are no longer employees or members of the bargaining unit." *Id.* at 920. *Wilkins* merely states that while in negotiations for a new or amended CBA, the parties may not negotiate the benefits of a person who is already retired, as they are not part of the unit that is bargaining for the new CBA. Existing employees covered by the CBA are, of course, entitled to bargain wages and other terms of employment, such as, early retirement benefits with a health care inducement. Since the Union has the power to bargain for benefits for existing employees after they go into retirement, it follows that the Union has not only the power, but the duty, to enforce those benefits for those employees once they become retirees.

The trial court, in reversing the Secretary, relied on *Bald Eagle* in determining that the matter should first go to arbitration. In *Bald Eagle,* the Supreme Court determined that "issues involving conflicts between a public sector collective bargaining agreement and fundamental statutory policies of this Commonwealth must be presented first to arbitration for determination, subject to appropriate court review of any award in conflict with such policies." *Id.* at 68, 451 A.2d at 674.

 In this case, although the retirees are not part of the current bargaining unit, this does not omit them from the benefits bargained for them by a prior bargaining unit that negotiated a previous CBA. If the School District violates a provision of a CBA that was in effect when the retiree retired, the Union has standing to file a grievance on behalf of the retiree against the School District, depending upon the language of the CBA. Like the language in the CBA in *Danville,* the CBA in the present controversy did not limit the grievance process to "employees" but permitted the Union to initiate a grievance for "persons" as distinguished from "employees". Article VIII. Furthermore, the CBA specifically addressed retirement benefits and made reference to "retirees" in Article XXIV(B) of the CBA. Thus, the trial court was correct in determining that this matter should first go to the arbitrator to determine whether the existing retirees had standing to file a grievance.

Accordingly, we affirm the decision of the trial court.

## ORDER

AND NOW, this 12th day of March, 2007 the order of the Court of Common Pleas of Westmoreland County in the above-captioned matter is affirmed.