# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Douglas Edgell and Aliquippa-Hopewell : <br>
Fraternal Order of Police James W. : <br>
Naim Memorial Lodge No. 26, : <br>
              Appellants : <br>
                 : <br>
        v. : <br>
                 : <br>
City of Aliquippa and Dwan B. Walker, : <br>
Mayor/Council President; Matthew : <br>
Mottes, Council Member; Donald C. : <br>
Walker III, Council Member; Jennifer : <br>
Milliner, Council Member; Arthur J. : <br>
Piroli, Jr., Council Member; Samuel L. :   No. 860 C.D. 2020 <br>
Gill, City Administrator :   Argued: February 7, 2022

BEFORE:   HONORABLE ANNE E. COVEY, Judge <br>
               HONORABLE ELLEN CEISLER, Judge <br>
               HONORABLE STACY WALLACE, Judge

OPINION BY <br>
JUDGE COVEY                             FILED: March 4, 2022

Former City of Aliquippa (City) Police Captain Douglas Edgell (Captain Edgell) and the City-Hopewell Fraternal Order of Police James W. Naim Memorial Lodge No. 26 (Union) (collectively, Appellants) appeal from the Beaver County Common Pleas Court's (trial court) August 19, 2020 order sustaining the City's, City Mayor/Council President Dwan B. Walker's, City Council Members Matthew Mottes, Donald C. Walker, III, Jennifer Milliner, Arthur J. Piroli, Jr.'s, and City Administrator Samuel L. Gill's (City Administrator Gill) (collectively, Appellees) preliminary objection (Preliminary Objection) to Appellants' Complaint (Complaint) and dismissing Appellants' Complaint. The issue before this Court is whether the trial court erred by dismissing Appellants' Complaint for lack of subject matter jurisdiction due to Appellants' failure to exhaust administrative remedies

under the Union and the City's Collective Bargaining Agreement (CBA).[1]   After review, this Court affirms.

## Background[2]

In March 1995, the City hired Captain Edgell as a police officer.  *See* Reproduced Record (R.R.) at 9a; Complaint ¶ 15.  On July 30, 2015, at the age of 50, Captain Edgell retired from City employment in good standing and began receiving his pension and payout of vested benefits under the CBA.[3]  *See id*.  The CBA in effect when Captain Edgell retired, January 1, 2005 to December 31, 2007, as modified, provided, in relevant part, that employees who retire during the CBA's term shall be eligible to receive up to $400.00 per month, beginning the month following the month in which they retire through their 65th birthday, to be used to obtain post-retirement health care insurance.[4]  *See* R.R. at 9a-11a; Complaint ¶ 17.

---

[1] Appellants separated this issue into three distinct issues: whether the trial court erred by dismissing the Complaint for lack of subject matter jurisdiction due to Appellants' failure to exhaust administrative remedies: (1) under the CBA, where the CBA's clear terms permit only regular full-time presently employed officers to process CBA disputes pursuant to the grievance procedure; (2) under City Ordinance No. 1 of 2009 of the City Police Pension Plan, as amended and restated, effective January 1, 2007 (Ordinance/Pension Plan), where vested CBA benefits concerning entitlement to a post-retirement health insurance stipend and unpaid wages are in dispute - not pension benefits; and (3) where it is not clear from the record that said remedies would be adequate.  *See* Appellants' Br. at 6.  Because all three issues are subsumed in the first issue, this Court has combined them.

[2] The facts are as stated in Appellants' Complaint filed in the trial court.

[3] The CBA in effect at the time of Captain Edgell's retirement was the CBA effective January 1, 2005 to December 31, 2007, as modified by the December 20, 2011 Interest Arbitration Award effective January 1, 2008 to December 31, 2012, and as further modified by the parties' Interest Arbitration Agreement effective January 1, 2015 through December 31, 2018.  *See* R.R. at 9a; Complaint ¶ 16.

[4] Captain Edgell alleges that, as a *retired* City police officer, he does not have the ability to grieve contract disputes, such as the denial of CBA health insurance benefits, pursuant to the CBA grievance procedure.  *See* R.R. at 14a; Complaint ¶ 22.  He maintains that CBA Article II and Article XV limit grievances to City employees, whereas Captain Edgell ceased being a City employee upon his retirement date, after which he became aware of the City's breach/violation of the CBA when the benefit was not paid.  *See id*.

Specifically, Article XVIII of the CBA provides:

## ARTICLE XVIII - HEALTH, WELFARE AND PENSION

. . . .

SECTION 3 - *Employees Retiring During the Term of the Agreement*

A. *Employees who retire during the term of* [*the CBA*] *shall be eligible to receive*, *beginning the month following the month in which they retire*, through their 65th birthday, up to $400.00 per month with this money to be used to obtain post[-]retirement health care insurance. . . . A retired employee who has access to coverage for himself/herself and/or his/her spouse (for example, through the post[-]retirement employment of the former employee, or through a spouse's employment) must take advantage of such an opportunity rather than through the benefit provided in this paragraph. Where such access would require from the former employee out-of-pocket contributions towards premiums, *the retired employee shall be eligible to receive up to $400.00 per month towards the payment of such premiums*. . . . A retiree who receives benefits under this provision and who subsequently develops an opportunity to receive health insurance coverage that does not impose an out[-]of-pocket cost on the former employee, or imposes a reduced out-of-pocket cost on the former employee, must promptly notify the City of its reduced monthly monetary obligation. . . . If the City deems it in its best interests to do so, the City can make arrangements with the former employee to pay the benefit provided in [the CBA] directly to the health care insurer. . . . *This potential monthly payment of up to $400.00 per month shall exist primarily to provide post-retirement health care coverage for the retired employee*, *and incidentally to provide health care coverage for a spouse who does not have access*, *independently*, *to his/her own health care coverage*. Access to this benefit, for an eligible former employee or the eligible spouse of a former employee, shall cease upon the retiree's sixty-fifth (65th) birthday.

R.R. at 51a, 56a-57a (italic emphasis added).

Captain Edgell paid nothing toward his health insurance from August 1, 2015 to December 31, 2015, because the City covered the monthly cost that was less per month than paying him the $400.00 allowance to obtain his own coverage, which was permissible due to the past practice. *See* R.R. at 19a; Complaint ¶ 26. Pursuant to the CBA, the $400.00 allowance would have been payable starting August 30, 2015/September 1, 2015, if it had been paid from the beginning and not delayed by the City's coverage and payment of Captain Edgell's health insurance. *See id.* In January 2016, the City removed Captain Edgell from its police officer health insurance policy, thereby ending coverage for him and his spouse due to the change of policy year. *See id.*; Complaint ¶ 27. Captain Edgell discovered this when he attempted to purchase prescriptions that totaled more than $1,000.00, rather than the usual $80.00 co-pay under the City's insurance plan. *See id.* Captain Edgell's January 2016 removal from the insurance policy should have triggered the City's payment of the CBA's monthly allowance so Captain Edgell could obtain health insurance for himself and his spouse. *See id.*; Complaint ¶ 28.

Upon learning of the situation, Captain Edgell wrote to City Administrator Gill, and requested that the City remove him from Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA)[5] coverage. *See* R.R. at 19a; Complaint ¶ 29. City Administrator Gill responded that Captain Edgell and his spouse's removal from the health insurance policy was a mistake, and that the City would rectify the error. *See id.* However, the City did not correct the issue. *See id.*; Complaint ¶ 30. Instead, on February 11, 2016, Captain Edgell received a letter from City Administrator Gill (February 11, 2016 Letter) which indicated that the City's records showed that Captain Edgell received his last vacation paycheck on November 6, 2015 (for the pay period ending October 31, 2015) and, as a result of

---

[5] 29 U.S.C. §§ 1161-1169.

4

the COBRA provisions and the CBA, the City was required to continue his insurance until December 31, 2015. *See id*.; *see also* R.R. at 117a-118a; Complaint Ex. 6.

The City claimed that it forwarded correspondence to all current employees concerning health insurance information advising them to select and update their current health plan benefits information. *See id*. The City acknowledged that Captain Edgell informed the City of his choice to remain on the current plan. *See id*. City Administrator Gill averred it was his belief that Captain Edgell did not review the language in the CBA regarding *non-active employees*, and declared that, when Captain Edgell contacted the City stating that he did not have any health insurance, the City's records showed that Captain Edgell had not made arrangements for payments to be made directly to Municipal Employers Insurance Trust (MEIT), the City's health insurer, or to the City for continued coverage under the City's health plan. *See id*. The City claimed that, in good faith, it reached out to MEIT to get Captain Edgell on the retirement or non-active plan after Captain Edgell told the City of the situation. *See id*. In addition, by the February 11, 2016 Letter, the City billed Captain Edgell $10,453.35, which the City alleges it paid on his behalf for monthly coverage from January 1, 2016 to March 31, 2016. *See* R.R. at 20a; Complaint ¶ 31; *see also* R.R. at 117a-118a; Complaint Ex. 6.

Also in the February 11, 2016 Letter, City Administrator Gill acknowledged that Captain Edgell asked when he was going to start receiving the $400.00 per month payment, and what he needed to do to ensure it. *See id*.; Complaint ¶ 32; *see also* R.R. at 117a-118a; Complaint Ex. 6. City Administrator Gill recalled that he strongly encouraged Captain Edgell to make provisions as soon as possible to attain alternative health insurance (under the CBA provisions) or pay the $10,453.25, less the $400.00 per month, by the end of February 2016. *See id*. City Administrator Gill advised Captain Edgell that it was imperative for Captain

5

Edgell to contact him so the City's Human Resource Department could notify MEIT. *See id.*

By February 20, 2016 letter (February 20, 2016 Letter), Captain Edgell notified City Administrator Gill that Captain Edgell and his spouse obtained health insurance under the University of Pittsburgh Medical Center (UPMC) Platinum Health Plan in February 2016, at their own expense. *See* R.R. at 21a; Complaint ¶ 34; *see also* R.R. at 120a; Complaint Ex. 7. Since February 2016, when Captain Edgell and his spouse were removed from the City's health insurance policy, they incurred monthly costs of $1,403.16 to maintain the UPMC Health Plan (which amount gradually decreased to $949.75 a month). *See id.*; Complaint ¶ 35. Captain Edgell explained to City Administrator Gill that he had to obtain the UPMC Health Plan insurance because the City placed him on the expensive COBRA coverage rather than keeping him on the City's plan for one year, or instead of paying him the $400.00 monthly payment toward his own coverage, as requested and per the CBA. *See id.* Also, by the February 20, 2016 Letter, Captain Edgell requested payment of the $400.00 monthly payment to help offset his UPMC Health Plan insurance cost, per the CBA. *See id.*

Captain Edgell contacted his Union representative, who raised the issue with the City. During a March 2, 2016 meeting, City Administrator Gill asked Union President James Price and Captain Edgell to put the issue in writing, so the City could address it. *See* R.R. at 22a; Complaint ¶ 36. Captain Edgell submitted his proof of UPMC Health Plan insurance coverage to the City in March 2016. *See id.*; Complaint ¶ 37; *see also* R.R. at 121a; Complaint Ex. 8. When Captain Edgell received no response regarding the $400.00 monthly payment, he followed up with City Administrator Gill on April 1, 2016. *See id.*

City Administrator Gill asked Captain Edgell why he purchased health insurance through UPMC. *See id.* Captain Edgell responded that he wanted the

$400.00 per month to offset his payments to UPMC, since the UPMC Health Plan insurance for himself and his spouse was already in effect. *See id.* From the time Captain Edgell and his spouse were removed from the City's health insurance in February 2016 until February 2018, when he began receiving health insurance through his new employer that offered full benefits, Captain Edgell paid $1,403.16 per month to maintain separate health insurance for himself and his spouse under the UPMC Health Plan. *See id.*; Complaint ¶ 39; *see also* R.R. at 124a; Complaint Ex. 9.

## Facts

On August 20, 2019, Appellants filed the Complaint, therein alleging two breach of contract counts, and seeking $22,053.35, plus ongoing payments, for the insurance premiums Captain Edgell paid under COBRA and the UPMC Health Plan, and will continue to pay until the age of 65, *see* R.R. at 26a, plus $23,194.80 for a retroactive pay increase Captain Edgell should have received from January 1, 2015 to July 31, 2015.[6] *See* R.R. at 27a. On November 12, 2019, Appellees filed their Preliminary Objections.[7] The trial court heard oral argument on February 12, 2020. On May 11, 2020, the trial court sustained Appellees' Preliminary Objection concerning subject matter jurisdiction, concluding: "[Appellants] failed to abide by

---

[6] The parties' Interest Arbitration Agreement effective January 1, 2015 through December 31, 2018, provided for a 2% across the board increase retroactive to January 1, 2015. *See* R.R. at 26a; Complaint ¶ 52; *see also* R.R. at 73a; Complaint Ex. 3. Captain Edgell was a City police officer, and a member of the Union's Bargaining Unit in 2015, until he retired on July 30, 2015, after which he began receiving his pension and payout of vested benefits under the CBA. *See id.*; Complaint ¶ 54. Captain Edgell alleges that he did not receive the retroactive 2% wage increase payable to him from January 1, 2015 to July 30, 2015, once the new CBA was approved. *See id.*; Complaint ¶ 56. Had he received said increase retroactive to January 1, 2015, his hourly wage would have increased to an estimated $19.33 per hour for an estimated base rate increase of $23,194.80 from January 1, 2015 to July 31, 2015. *See* R.R. at 27a; Complaint ¶ 57.

[7] Although Appellees filed multiple objections, only the objection to subject matter jurisdiction was sustained.

[the CBA's and the Public Employe Relations Act's (PLRA)[8]] mandatory grievance and/or arbitration procedures and[,] as a result, [Appellants] deprived th[e trial c]ourt of subject matter jurisdiction." R.R. at 272a; Trial Ct. May 11, 2020 Op. at 7. However, the trial court overruled Appellees' Preliminary Objection requesting dismissal based on Appellants' failure to comply with the CBA's grievance procedures, concluding: "The issue of the applicability of the CBA and its[] terms to [Captain] Edgell, as a retiree, is in clear dispute." R.R. at 273a; Trial Ct. May 11, 2020 Op. at 8.

On June 8, 2020, Appellants filed a Motion for Reconsideration. On June 9, 2020, the trial court granted the Motion for Reconsideration, and scheduled a hearing to determine the merits thereof. On June 22, 2020, the trial court heard oral argument. On August 19, 2020, the trial court amended its May 11, 2020 order, sustaining Appellees' Preliminary Objection and dismissing the Complaint, ruling: "Based on the clear language of *Section 9.07* [of the Ordinance/Pension Plan[9]], the [trial c]ourt finds that the appeal procedure listed does apply to [Captain Edgell] and that [Captain Edgell] is required to abide by the terms agreed upon." R.R. at 386a; Trial Ct. Aug. 19, 2020 Op. at 2. "Accordingly, [Appellees'] [P]reliminary [O]bjection requesting dismissal because [Captain Edgell] failed to follow the grievance procedure listed in the CBA should be sustained." *Id.* Appellants appealed to this Court.[10] On October 5, 2020, the trial court filed an order pursuant

---

[8] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101.2301.

[9] The City enacted an ordinance, relative to the establishment and maintenance of employees' pension, annuity, insurance and benefit fund or funds, to amend certain provisions of the pension plan or program applicable to the City police employees. *See* R.R. at 329a.

[10]　　'Where a [trial court] dismisses a complaint based on preliminary objections, this Court's review is limited to determining whether the trial court committed an error of law or an abuse of discretion.' When considering preliminary objections, [this Court] must accept as true all well-pleaded material facts alleged in the complaint and all reasonable inferences deducible therefrom. A preliminary

8

to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) directing Appellants to file a Concise Statement of Errors Complained of on Appeal (Rule 1925(b) Statement). On October 14, 2020, Appellants filed their Rule 1925(b) Statement.

**Discussion**

Appellants argue that the trial court erred by dismissing the Complaint for lack of subject matter jurisdiction due to Appellants' failure to exhaust remedies under the CBA where the CBA's clear terms permit only regular, full-time, presently employed officers to process CBA disputes pursuant to the grievance procedure. Specifically, Appellants contend that Articles II and XV of the CBA explicitly limit grievances to City *employees*, and Captain Edgell ceased to be an *employee* upon his retirement date, only after which he became aware of the City's breach/violation of the CBA when the benefit was not paid.

Appellees rejoin that, by the CBA's plain language and the Ordinance/Pension Plan, "a retired officer is entitled to grieve CBA pension benefit disputes - including disputes relating to bargained-for retirement benefits in the CBA - under the CBA's grievance procedure." Appellees' Br. at 19. Appellees maintain that Captain Edgell "not only was permitted to pursue the CBA grievance procedure in accordance with Section 9.07 of the Ordinance/Pension Plan addressing the appeal

---

> objection should be sustained only in cases when, based on the facts pleaded, it is clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief. Because a preliminary objection in the nature of a demurrer presents a question of law, this Court's standard of review of a court of common pleas' decision to sustain a demurrer is de novo and the scope of review is plenary.

*Laskaris v. Hice*, 247 A.3d 87, 89 n.5 (Pa. Cmwlth. 2021) (quoting *Brown v. Wetzel*, 179 A.3d 1161, 1164 n.2 (Pa. Cmwlth. 2018)).

9

procedure for retirees, but he was required to pursue this procedure and arbitrate his CBA claims." *Id*.

Article II of the CBA provides, in relevant part:

**ARTICLE II - RECOGNITION**

A. The City hereby recognizes the Union as the exclusive bargaining agent for all Police Officers of the City . . . , excluding the Chief of the Bureau of Police.

B. All members in this bargaining unit shall consist only of such regular full[-]time employees as hereinbefore defined and enumerated.[11, 12]

R.R. at 33a.  Article XV, Section 1 of the CBA states:

**ARTICLE XV - GRIEVANCE PROCEDURE**

SECTION 1 - GENERAL

A. It shall be the policy of the City to encourage a harmonious and cooperative relationship with its employees and to resolve employee grievances in accordance with fair and orderly procedures.

B. **A grievance is** defined as **a dispute concerning the interpretation**, *application*, *or alleged violation* **of a specific term or provision of this** [**CBA**].

C. It is recognized that employees may preliminarily discuss any grievance with the Grievance Committee of the Union, prior to submitting a formal grievance.  An employee is entitled to select the Union or its accredited representative to represent him/her during all steps of the grievance procedure which follows.

D. **All grievances which may arise by virtue of this** [**CBA**] **or otherwise**, excluding those pertaining to

---

[11] The record does not contain any predecessor CBA's definition of a *regular full-time employee*.

[12] Article XVI, Section 1(A) of the CBA states: "The provisions of [the CBA] shall be applied equally to all employees in the bargaining unit . . . ."  R.R. at 48a.

suspension, or termination, **shall be adjusted in the following manner**.

R.R. at 45a-46a (italic and bold text emphasis added).

Article XV, Section 2 of the CBA specifies:

SECTION 2 - Steps

. . . .

D. If the employee is not satisfied with the disposition of his/her grievance at the third step, he/she may appeal to arbitration within five (5) workdays after receiving the decision at the third step or in not less than twenty (20) workdays nor more than twenty-five (25) workdays after the grievance was presented at the third step. A request for arbitration may be initiated by the Union serving upon the City a notice in writing of an intent to proceed to arbitration. The notice shall identify the [CBA] provision in dispute, the issue(s) to be determined, and the employee(s) involved. Upon receipt of a notice requesting arbitration, the parties shall meet to select an arbitrator in accordance with the requirements of [what is commonly referred to as] Act 111.[13]

R.R. at 46a-47a. Further, Article XVIII, Section 1 of the CBA mandates, in relevant part: "The City and the Union agree that **health**, **welfare** and **pension benefit plans** shall be **maintained for the benefit of the employees covered by** [**the CBA**], **the provisions of which are deemed to be a part of** [**the CBA**]. These plans shall be effective and concurrent with [the CBA]." R.R. at 51a (emphasis added).

The Ordinance/Pension Plan mandates:

OFFICIAL CITY . . . ORDINANCE NO. 1 OF 2009

CITY . . . POLICE **PENSION** PLAN

(as amended and restated, effective January 1, 2007)

. . . .

---

[13] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-217.12.

11

ARTICLE IX

ADMINISTRATION

. . . .

9.07  Appeal Procedure - **Any person whose application for *retirement benefits* is denied**, who questions the amount of benefit paid, who believes a benefit should have commenced which did not so commence **or who has made some other claim arising under the Plan**[14] ("Claimant"), **shall have the right to an Election of Remedies**.  The Claimant may contest the Plan Administrator's determination through the grievance and arbitration provisions of the [CBA].  Alternatively, the Claimant may seek resolution of the claim(s) under the procedure hereinafter set forth.

. . . .

(f) Nothing contained herein is intended to abridge any right of a Claimant to appeal any final decision hereunder to a court of competent jurisdiction under [Section 2 of the Local Agency Law,] 2 Pa.C.S.[] [§] 752 ("Any person aggrieved by an adjudication of a local agency . . . shall have the right to appeal therefrom.").  No decision hereunder is a final decision from which such an appeal may be taken until the entire appeal procedure of [] [S]ection 9.07 of the Plan has been exhausted.  The appeals of arbitration awards for Claimants utilizing the grievance and arbitration provisions of the [CBA] shall follow the procedure set forth in the Pennsylvania Judicial Code.

R.R. at 330a (italic and bold emphasis added).

Retirement benefits are addressed in Article IV of the Ordinance/Pension Plan, which provides, in relevant part:

---

[14] Article I, Section 1.29 of the Ordinance/Pension Plan provides: "'Plan' shall mean the City . . . Police Pension Plan."  R.R. at 82a.

ARTICLE IV

RETIREMENT BENEFITS

4.01 Normal Retirement - Each [Plan p]articipant shall be entitled to a Normal Retirement Benefit after retirement on or after attainment of Normal Retirement Age.

4.02 Normal Retirement Benefit - Each [Plan p]articipant who shall become entitled to a benefit pursuant to [S]ection 4.01 [of the Ordinance/Pension Plan] shall receive a benefit commencing on the [Plan p]articipant's Normal Retirement Date and paid in the Normal Form as provided in [S]ection 7.01 [of the Ordinance/Pension Plan]. The monthly amount of the Normal Retirement Benefit shall be equal to fifty percent (50%) of the [Plan p]articipant's Average Compensation, plus Service Increment Benefit, if any.

4.03 Late Retirement Benefit - A [Plan p]articipant may continue in [e]mployment beyond the attainment of Normal Retirement Age subject to the Employer's rules and regulations regarding retirement age. If a [Plan p]articipant who has met the requirements of [S]ection 4.01 [of the Ordinance/Pension Plan] continues in [e]mployment beyond the [Plan p]articipant's Normal Retirement Date, there shall be no retirement benefits paid until [e]mployment has ceased and the [Plan p]articipant's retirement actually commences. . . .

R.R. at 85a.

In the instant case, Appellants allege in the Complaint that Captain Edgell's removal from the City's health insurance in January 2016 should have triggered the payment of the up to $400.00 monthly allowance to Captain Edgell, **per the CBA**, so he could obtain health insurance for himself and his spouse. *See* R.R. at 19a; Complaint ¶ 28. Further, Appellants aver that since Captain Edgell and his spouse were removed from the City's health insurance policy in February 2016, Captain Edgell has incurred monthly costs of $1,403.16 to maintain separate health insurance with the UPMC Health Plan until February 2018, when he began receiving

13

health insurance through his new employer. *See* R.R. at 22a; Complaint ¶ 39. Finally, Appellants, in the Complaint's prayer for relief, seek $22,053.35, plus ongoing amounts, for the insurance premiums Captain Edgell has paid and will continue to pay until the age of 65, *see* R.R. at 26a, plus $23,194.80 for **a retroactive pay increase he should have received** from January 1, 2015 to July 31, 2015. *See* R.R. at 27a.

> The Pennsylvania Supreme Court has explained:
>
> The General Assembly, pursuant to this constitutional authorization, enacted Act 111. Section 1 of Act 111 states "[p]olicemen . . . have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act." 43 P.S. § 217.1. Further, Section 4 of Act 111 provides, in part, that disputes may be resolved by arbitration "[i]f[,] in any case of a dispute between a public employer and its policemen . . . [,] the collective bargaining process reaches an impasse and stalemate . . . ." 43 P.S. § 217.4(a). In [*City of Philadelphia v.*] *International Ass*[*'n*] *of Firefighters*, [999 A.2d 555 (Pa. 2010),] this Court analyzed the history and development of Act 111 and concluded "**it is apparent that the General Assembly intended that the scope of collective bargaining set forth in Section 1** [**of Act 111**] **be viewed broadly**, **to encompass any subject that is rationally related to the** 'terms and conditions of employment,' including employee 'compensation, hours, working conditions, pensions, retirement and other benefits**.'" *Int'l Ass'n of Firefighters*, 999 A.2d at 569 (citing 43 P.S. § 217.1; *Borough of Ellwood City v. P*[*a.*] *L*[*ab.*] *R*[*els.*] *B*[*d.*], . . . 998 A.2d 589 ([Pa.] 2010)).

*City of Arnold v. Wage Policy Comm. of City of Arnold Police Dep't*, 171 A.3d 744, 749-50 (Pa. 2017) (emphasis added). "In Pennsylvania, an employee who is a beneficiary of a collective bargaining agreement is bound by the terms of the

agreement relating to his pursuit of remedies." *Am. Tel. & Tel. v. Clifford*, 593 A.2d 903, 904 (Pa. Super. 1991).

Preliminarily, Appellants claim that Captain Edgell is entitled to certain benefits he did not receive pursuant to the CBA. However, Appellants maintain that, because, due to his retirement, Captain Edgell is no longer a City employee, the CBA does not apply to him. This Court disagrees.

"[**A**]**lthough** the **retirees are not part of the current bargaining unit**, **this does not omit them from the benefits bargained for them by** a prior bargaining unit that negotiated **a** previous [**collective bargaining agreement**]." *Hempfield Area Sch. Dist. v. Pa. Lab. Rels. Bd.*, 920 A.2d 222, 226 (Pa. Cmwlth. 2007) (emphasis added).[15] Here, "the CBA specifically addressed retirement benefits and made reference to 'retirees' in Article X[VIII, Section 3] of the CBA." *Hempfield*, 920 A.2d at 226. In particular, Article XVIII, Section 3 of the CBA, entitled Employees Retiring During the Term of the Agreement, sets forth health benefits that do not begin until **after** an employee retires. That provision states, in pertinent part: "Employees who retire during the term of [the CBA] . . . shall be

---

[15] *Cf. Borough of Dunmore v. Arnone* (Pa. Cmwlth. No. 783 C.D. 2019, filed Mar. 6, 2020). In *Dunmore*, this Court held that the collective bargaining agreement clearly limited the grievance process to employees, and because the appellant firefighters were retirees and not employees, they were not bound by the grievance process. However, the only portion of the collective bargaining agreement the Court referenced was the grievance procedure which specifically referred to employees, and provided: "**Should any** [e]**mployee or group of** [e]**mployees feel aggrieved** as a result of any condition arising out of the employer-[e]mployee relationship, . . . **adjustment shall be sought as follows by the** [e]**mployee**, with the assistance of the [u]nion[.]" *Dunmore*, slip op. at 7 (emphasis added). Here, Article XV (Grievance Procedure), Section 1(D) of the CBA provides: "**All grievances which may arise by virtue of this** [**CBA**] **or otherwise**, excluding those pertaining to suspension, or termination, **shall be adjusted in the following manner**." R.R. at 46a (emphasis added). Further, the Ordinance/Pension Plan specifically refers to retired police officers. Both the CBA and the Ordinance/Pension Plan (which is incorporated into the CBA), direct that the CBA applies to any disputes thereunder. Accordingly, *Dunmore* does not control in the instant matter.

15

eligible to receive up to $400.00 per month with this money to be used to obtain post[-]retirement health care insurance." R.R. at 56a. Further, Article XVIII, Section 1 of the CBA mandates, in relevant part: "The City and the Union agree that health, welfare and pension benefit plans shall be maintained for the benefit of the employees covered by [the CBA], the provisions of which are deemed to be a part of [the CBA]. " R.R. at 51a. Moreover, Section 9.07 of the Ordinance/Pension Plan clearly provides that **retirees** "**may contest the** Plan Administrator's **determination through the grievance and arbitration provisions of the** [**CBA**],"[16] R.R. at 330a (emphasis added), thus, evidencing that the CBA's grievance procedure applies to retirees.

As the CBA's terms regarding health benefits, which Appellants are alleging the City violated, apply to Captain Edgell, so too do the CBA's terms regarding the resolution of disputes thereunder. *See City of Arnold*, 171 A.3d at 755 (The collective bargaining agreement applied to a police officer's widow who disputed her pension benefits because "the pension benefit was a specific term or condition of employment arising from [the police officer's] employment as a [c]ity police officer, [and] **the benefit was incorporated into the parties**' [**collective bargaining agreement**][.]")[17] (emphasis added). Therefore, this Court will examine the CBA to determine if Captain Edgell was required to utilize the grievance procedure.[18]

---

[16] Article XVIII, Section 1 of the CBA mandates, in relevant part: "The City and the Union agree that health, welfare and pension benefit plans shall be maintained for the benefit of the employees covered by [the CBA], the provisions of which are deemed to be a part of [the CBA]." R.R. at 51a.

[17] The issue before the Court was whether the arbitrator had jurisdiction to determine the dispute. The *City of Arnold* Court ruled: "[T]he arbitrator had subject matter jurisdiction under Act 111 and the [collective bargaining agreement] to adjudicate th[e] dispute because the surviving spouse's pension benefit was incorporated into the [collective bargaining agreement]." *Id*. at 757.

[18] Because Appellants are not disputing any matters related to Captain Edgell's pension, this Court agrees with Appellants that the Ordinance/Pension Plan does not apply. *See* R.R. at

Article XV, Section 1(D) of the CBA provides that the grievance procedure applies to "[a]ll grievances which may arise by virtue of this [CBA] or otherwise," R.R. at 46a, with the exception of an employee's "suspension or termination" in which case, Article XV, Section 7(A) of the CBA directs that the employee "may elect to not proceed in accordance with [the grievance procedure] and instead elect to proceed in accordance with Civil Service procedures set forth by statute." R.R. at 48a. Further, Article XV, Section 1(B) of the CBA instructs: "A grievance is defined as a dispute concerning the interpretation, application, or alleged violation of a specific term or provision of this [CBA]." R.R. at 45a.

Appellants averred that Captain Edgell should have received the payment of the up to $400.00 monthly allowance in January 2016, **per the CBA**, but he did not. *See* R.R. at 19a; Complaint ¶ 28. Thus, Appellants alleged a CBA violation, and Captain Edgell's exclusive remedy is the grievance procedure. Because Captain Edgell did not file a grievance, the trial court properly concluded that it did not have subject matter jurisdiction over that claim.

In addition, Appellants alleged that Captain Edgell should have received a retroactive pay increase from January 1, 2015 to July 31, 2015. *See* R.R. at 27a. They aver that Captain Edgell was entitled to the retroactive pay increase because he was "employed at the City. . . Police Department, and [was] a member of the Union's Bargaining Unit" from January 1, 2015 through July 30, 2015. R.R. at 26a; Complaint ¶ 54. Article X, Section 3 of the CBA provides: "Grievances regarding wage classification and rate of pay of any individual member of the Union shall be settled in accordance with the procedures hereinafter provided for the

329a (Ordinance/Pension Plan Preamble defining "City . . . Pension Plan" as the "Plan"). As Captain Edgell's "claims" do not "aris[e] under the Plan," *see* R.R. at 330a, Section 9.07 of the Ordinance/Pension Plan, and are not retirement benefits as that term is described in Article IV of the Ordinance/Pension Plan, *see* R.R. at 85a, the applicable appeal procedure therein does not apply.

17

settlement of grievances in Article XV [(Grievance Procedure)]." R.R. at 41a. Because Captain Edgell did not follow the CBA's grievance procedure to address his rate of pay as required under the CBA, the trial court properly concluded that it did not have subject matter jurisdiction over such claim.

## Conclusion

"[A]ccept[ing] as true all well-pleaded material facts alleged in the [C]omplaint and all reasonable inferences deducible therefrom[,]" as this Court must, "it is clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief." *Laskaris v. Hice*, 247 A.3d 87, 89 n.5 (Pa. Cmwlth. 2021) (quoting *Brown v. Wetzel*, 179 A.3d 1161, 1164 n.2 (Pa. Cmwlth. 2018)). Accordingly, the trial court properly sustained the Preliminary Objection and dismissed the Complaint.

For all of the above reasons, the trial court's order is affirmed.[19]

_____
ANNE E. COVEY, Judge

---

[19] "An appellate court may affirm on other grounds where grounds for affirmance exist." *Martel v. Allegheny Cnty.*, 216 A.3d 1165, 1168, n.2 (Pa. Cmwlth. 2019).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Douglas Edgell and Aliquippa-Hopewell :
Fraternal Order of Police James W. :
Naim Memorial Lodge No. 26, :
                Appellants :
                 :
         v. :
                 :
City of Aliquippa and Dwan B. Walker, :
Mayor/Council President; Matthew :
Mottes, Council Member; Donald C. :
Walker III, Council Member; Jennifer :
Milliner, Council Member; Arthur J. :
Piroli, Jr., Council Member; Samuel L. : No. 860 C.D. 2020
Gill, City Administrator :

## O R D E R

AND NOW, this 4th day of March, 2022, the Beaver County Common Pleas Court's August 19, 2020 order is affirmed.

_____
ANNE E. COVEY, Judge